**SEABOCK PRICE APC**
Dennis Price SBN 279082
Amanda Seabock SBN 289900
Christopher A. Seabock SBN 279640
Sara Johnson, SBN 346263
117 E. Colorado Blvd., Ste. 600
Pasadena, California 91105
Phone: 323-616-0490
amanda@seabockprice.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Byron Chapman,** | Case Number: |
| Plaintiff, | |
| v. | **Complaint for Damages and Injunctive Relief for Violations of:** First Amendment to the U.S. Constitution; Fourteenth Amendment to the U.S. Constitution; Americans with Disabilities Act; Disabled Persons Act |
| **County of Placer;** and Does 1-10 | |
| Defendant(s). | |

Plaintiff Byron Chapman alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

### INTRODUCTION

1.  The First Amendment to the United States Constitution prohibits the government from infringing on certain fundamental, inalienable rights. Among the rights safeguarded is the right to "petition the Government for a redress of grievances." This right does not merely give a citizen the ability to address the government for perceived wrongs. Rather, it takes as fundamentally true that every person, by dint of birth, has this right already allocated to him or her and bars the government from action, or inaction, that would infringe upon it.

1

2.   Abrogation of these fundamental rights is subject to "strict scrutiny." A law must serve a compelling state interest and the restrictions on these rights must be the least burdensome to serve that interest.

3.   The Fourteenth Amendment guarantees equal protection under the law and prohibits all laws that abridge the constitutional rights of its citizens without due process. Through the Fourteenth Amendment, Congress was imbued with the power to enforce the provisions of that Amendment, a power they exercised in creating the Americans with Disabilities Act ("ADA"). *Tennessee v. Lane*, 541 U.S. 509, 520 (2004).

4.   Some 200 years after the ratification of the First Amendment, in a never-ending quest to preserve and enhance the rights of all Americans, the Americans with Disabilities Act was passed. The ADA was a landmark piece of legislation that promised equal access to disabled individuals. Hailed as a long overdue "independence day" by President George H.W. Bush at the time of signing, the law recognized that disabled Americans had been overlooked by prior civil rights laws and were entitled to independence and dignity in all aspects of society.

5.   Recognizing that the ADA lacked sufficient remedies, the State of California promptly amended the Disabled Persons Act to ensure those who are denied equal rights under the ADA have sufficient motivation and remedies to enforce the law.

6.   However, more than 30 years later, municipal entities within California still operate programs, services, and activities in flagrant violation of the law. These are not just small or "technical" violations, but actual barriers to access. What amounts to a minor or invisible difference to those without a disability may cause difficulties, discomfort, embarrassment or outright injury to those with disabilities.

7.   Plaintiff is a disabled individual and a member of a protected class of individuals guaranteed rights under state and federal laws. Though progress has been made for access over the decades the ADA has been law, Plaintiff remains frustrated by the number of programs, services, and activities that remain noncompliant.

8.   Plaintiff is an avid advocate for himself and when he encounters barriers to access he first gives the offending party an opportunity to comply with the law, an adequate time to do so, and then if that fails he will file suit to force compliance with state and federal laws.

9.   Plaintiff visited the Placer County Board of Supervisors facility, colloquially known as The Domes ("The Domes"), located at 175 Fulweiler Avenue, Auburn, California, 95603, on several dates in 2023, including January, March, April, May, and July[1] and encountered barriers to access on each date.

10. Plaintiff brings this action against County of Placer ("Defendant") for failure to design, maintain, construct, and operate the Placer County Board of Supervisors facility ("The Domes") so as to ensure full and equal access in compliance with applicable accessibility laws.

11. Plaintiff seeks an injunction requiring Defendant to provide him "full and equal" access to The Domes and the activities within as required by law. Plaintiff also seeks damages and reasonable attorney's fees, costs, and litigation expenses for enforcing his civil rights.

## **PARTIES**

12. Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Placer.

13. Defendant County of Placer, at all times relevant and as alleged herein, is a political subdivision of the State of California.

14. Defendant County of Placer owned, operated, and maintained the real property located at or about 175 Fulweiler Avenue, Auburn, California, 95603, and its related public facilities, in January, March, April, May, and July 2023.

15. Defendant County of Placer owns, operates, and maintains the real property located at or about 175 Fulweiler Avenue, Auburn, California, 95603, and its related public facilities, currently.

---

[1] Plaintiff also visited in September 2023 and November 2023 but those visits have not been included in this Complaint as neither has completed the Tort Claim process.

Complaint, Placer County

16. Does 1-10, owned, operated, or maintained the real property located at or about 175 Fulweiler Avenue, Auburn, California, 95603, and its related public facilities, in January, March, April, May, and July 2023.

17. Does 1-10, own, operate, or maintain the real property located at or about 175 Fulweiler Avenue, Auburn, California, 95603, and its related public facilities, currently.

18. At all times relevant to this complaint, Defendants had and continue to have an ongoing obligation to assess, identify, and remove all barriers to access so as to provide full and equal programmatic access.

19. Plaintiff does not know the true names of all Defendants, their capacities, their ownership connection to the property its facilities, or their relative responsibilities in causing the access violations herein complained of and alleges a joint venture and common enterprise by all such defendants. Plaintiff is informed and believes that each of the defendants herein is responsible in some capacity for the events herein alleged or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the defendants are ascertained.

## JURISDICTION AND VENUE

20. This Court has subject-matter jurisdiction of this action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 42 U.S.C. § 12131, *et seq.*, as Plaintiff's claims arise under the U.S. Constitution and Title II of the ADA.

21. This Court has supplemental jurisdiction over Plaintiff's non-federal claims (Cal. Code § 54, *et seq.*) pursuant to 28 U.S.C. § 1367, because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

22. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants are subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

Complaint, Placer County

23. Plaintiff has complied with the California Torts Claim Act (CTCA), Cal. Gov. § 910, *et seq*. Plaintiff submitted each visit to the County timely for review. Each claim was rejected.

## FACTUAL ALLEGATIONS

24. Plaintiff has a spinal injury and uses a wheelchair for mobility and is a member of a protected class of individuals guaranteed rights under state and federal law.

25. The Domes is a public building that houses municipal meetings.

26. Plaintiff went to The Domes facility on January 18, 2023, March 8, 2023, April 12, 2023, May 10, 2023, and July 12, 2023. Plaintiff made each visit with the intention to attend the Local Agency Formation Commission ("LAFCO") meetings and comment on specific agenda items. In doing so, Plaintiff intended to avail himself of the LAFCO meetings, which are a service, program, or activity of the County of Placer, and to exercise his First Amendment right to petition the government for a redress of grievances.

27. Unfortunately, on the dates of Plaintiff's visits, The Domes failed to comply with ADA and California standards as they relate to wheelchair users like the Plaintiff.

28. Defendants have failed to provide and/or maintain in working and useable condition those features required to provide ready access to persons with disabilities.

29. Plaintiff is civic-minded and is extraordinarily concerned about the policies that affect his hometown of Lincoln, California. As a result, and as a part of his civic duty, Plaintiff regularly attends local political meetings, including the LAFCO meetings. Plaintiff is very opinionated on the actions taken by the County as they relate to the City of Lincoln.

30. These meetings take place in the Board of Supervisors Meeting Room at The Domes ("Meeting Room"). Plaintiff encountered physical barriers to access in the Meeting Room on January 18, 2023, March 8, 2023, April 12, 2023, May 10, 2023, and July 12, 2023.

31. The Meeting Room did not provide any wheelchair seating areas on the dates of Plaintiff's visits. As a result, Plaintiff was forced to sit far in the back and/or in the aisle. The vantage point from a wheelchair already makes seeing who is speaking and what is happening difficult. But the lack of dedicated wheelchair seating exacerbated this condition such that Plaintiff could not really see what was happening. This led to a feeling of being 'Othered' and of

5

not being a full participant. Plaintiff was acutely aware that the seating options alienated him from the other attendees.

32. But the seating was not the only, or even the most severe, issue in the Meeting Room. When Plaintiff took his turn to speak to the issues, he found that there was no lowered podium/microphone for disabled speakers. In fact, Plaintiff had to request a different microphone to allow him to be heard because the microphone at the lectern was too far away. Further, the lack of a lowered podium meant he had to position himself behind the standing podium to organize his documents, which made it so that he could not see the people to whom he was speaking and, presumably, for them to see him. Thus, he was unable to make eye contact or otherwise speak directly to the LAFCO board members, as others are able to do, and as is his right.

33. These inaccessible conditions are extraordinarily frustrating to Plaintiff, who felt that he was being shut out of the process by which he could address his elected and civic leaders. Plaintiff was also frustrated at the blatant lack of adherence to the ADA Standards by the local government.

34. The inaccessible conditions in the Meeting Room violated Plaintiff's civil rights, not only as they relate to the ADA, but also as to the rights afforded all citizens under the United States Constitution to petition their government and elected officials. As more fully set forth below, Defendant County of Placer had ample notice of the conditions that that deprived Plaintiff of his rights. Plaintiff's ability to attend the meetings and to participate was not equivalent to that of other citizens.

35. Unfortunately, the Meeting Room was not the only part of The Domes where Plaintiff encountered inaccessible conditions.

36. Plaintiff encountered parking barriers on January 18, 2023, March 8, 2023, April 12, 2023, May 10, 2023, and July 12, 2023.

37. Accessible parking provides disabled individuals safe access to the affiliated location. These spaces—when properly designed—deter unauthorized individuals from parking in, or blocking access to, the parking space. Additionally, proper design and location of compliant

spaces provides additional access and safety. The failure to provide proper scoping left ambiguity about where Plaintiff was supposed to park for access. Plaintiff has first-hand experience with using noncompliant parking and is unable to use noncompliant alternatives without concern for his safety and ability to return to his vehicle.

38. Here, The Domes did not provide the correct number of disabled parking spaces. Despite providing approximately 120 total parking spaces, The Domes only provided 4 designated disabled spaces. Of those spaces, none were designated as "Van Accessible" or had the required fine signage.

39. Compliant van accessible spaces can come in two configurations: A 96-inch space with a 96-inch access aisle or a 132-inch space with a 60-inch access aisle. Here, although there are two parking spaces that meet this space/aisle combination, neither is accessible. Both of these are angled spaces have access aisles with excessive slopes. And one has the access aisle on the driver's side of the parking space in violation of section 502.3.4 of the 2010 Standards. Additionally, the parking spaces at issue did not have the proper ISA or fine signage and the required markings and 'NO PARKING' stenciling had been allowed to fall into such disrepair that they are not readily noticeable or recognizable.

40. Plaintiff drives a specially equipped van with a ramp that he can deploy from the passenger side that allows him to safely enter and exit his vehicle while using his wheelchair. Having an accessible van parking space is important to Plaintiff who relies on the additional space that a van accessible space and access aisle provide.

41. Here, due to the insufficient configurations, slopes, and markings on the spaces, Plaintiff was concerned that he would inadvertently park incorrectly, ironically subjecting himself to ticketing or towing. But, he was forced to park in an overlapping manner not only due to the poor markings, but also to combat the possibility of being blocked out of his van while simultaneously avoiding slopes. Without the additional space a van space and access aisle provide, Plaintiff risks having another vehicle park too close to him, rendering it impossible to

Complaint, Placer County

deploy his ramp and reenter his vehicle. Plaintiff also feared for his safety using the spaces as-is because the slopes in the aisles make it difficult to safely transfer to and from his van's ramp into the aisle's surface.

42. Plaintiff's troubles did not end after parking his van. To gain entry to The Domes, Plaintiff was forced to traverse a noncompliant route. Plaintiff encountered inaccessible routes on January 18, 2023, March 8, 2023, April 12, 2023, May 10, 2023, and July 12, 2203.

43. The path to the entry of The Domes included a long, steep ramp. This ramp is more than 20 feet long, with a change in elevation greater than two feet and a grade greater than 9%. While this long, steep ramp is just within the allowable rise/run ranges, it does not have the required, complaint handrails needed to make it safely navigable for a wheelchair user like Plaintiff. Handrails are required on both sides of a ramp with these measurements and the top of gripping surfaces of handrails shall be at least 34 inches above the walking surface. Here, the ramp had a single handrail on the side closest to the stairs with a gripping surface at approximately 32 inches above the walking surface. Lastly, the handrails did not have rounded ends.

44. Using ramps like this, that are steep and long without proper edge protection, causes Plaintiff great anxiety. Plaintiff fears tipping at any time but a steep ramp presents the possibility of more significant injury, should an accident occur.

45. Plaintiff also encountered numerous restroom barriers on March 8, 2023, April 12, 2023, May 10, 2023, and July 12, 2023.

46. Accessible restrooms are a critical feature. Due to his disability, Plaintiff must always be cognizant of where the nearest accessible restroom is, and the failure to provide accessible restroom facilities denied him the peace of mind of knowing he would be able to relieve himself if needed. Here, Plaintiff found that compliant restrooms were not provided.

47. When restrooms are provided, accessible restrooms must also be provided. Here, the mirror, soap, paper towels, and shelf for setting personal items are all mounted too high. All of these conditions were burdensome to Plaintiff as he was forced to reach, strain, or just forgo use due to the placement of the amenity, but this was especially true of the paper towels. Because

Complaint, Placer County

the paper towels were mounted out of reach, Plaintiff had no choice but to dry his hands with toilet paper. Anyone who has done this knows it is marginally effective at best. But what is a minor annoyance to most can be an extreme difficulty for a wheelchair user like Plaintiff. Plaintiff uses an electric wheelchair with a motorized hand control. Plaintiff was immensely anxious that any residual moisture on his hands or wrists could inadvertently get into the gears and damage his wheelchair, possibly leaving it inoperable. This could potentially leave him stranded wherever this incident occurs. Plaintiff was therefore very apprehensive about the situation and also very frustrated that it existed at all.

48. On information and belief, the above conditions currently exist or the policies that allowed them to occur have not been changed.

49. These above barriers relate to and impact the Plaintiff's disability. Plaintiff personally encountered these barriers.

50. These above barriers individually and jointly denied Plaintiff full and equal programmatic access to the Domes and the activities therein and served as unnecessary impediments to his exercise of his First Amendment rights with no corresponding government interest.

51. As is set forth above, Plaintiff complied with the CTCA and provided Tort Claims for each incident. However, before even taking this step, Plaintiff attempted to obtain the correction informally by sending a letter dated February 14, 2023 (after his first visit) about his experiences:

> Placer County Administrative Office
>
> Attn:   Ms. Genevieve Vargas,
>           County Capital Improvements Mgr.
> 175 Fulweiler Ave.
> Auburn, CA 95603
>
> RE: ADA Barriers Exterior/Interior and notification
>
> Dear Ms. G. Vargas,
>
>     It was a pleasure speaking to you the other day.

Please forward this letter to the person in charge of Accessibility Issues for the County. That should help speed up the process.

This is a recap of our telephone conversation on February 1, 2023, regarding the Americans with Disabilities Act (ADA) barriers at the Placer Count Board of Supervisors building, 175 Fulweiler Ave., Auburn, CA. I believe it is referred to as the Dome Building. If not correct I apologize. I was at the LAFCO meeting on Jan. 18, 2023 and it started at 4:00 pm.

I spoke to you about the following ADA issues that I encountered during my visit for the LAFCO meeting on January 18, 2023. They are as follows:

- NON Compliant Disability Parking spaces
- Chamber where the LAFCO Meeting was held has No designated seating spaces for Disabled Community Members and Guests who are Wheelchair users, Simi-Ambulatory and Companion seating.
- The current Podium with mount Microphone is not wheelchair friendly and therefore unusable by the Disabled Community who use a wheelchair, walker or other means for mobility.

Once corrected everyone who has an interest or need to visit the Placer County Board of Supervisors Building at 175 Fulweiler Ave., Auburn, CA can do so. When I say everyone, I mean just that. The **NON Disabled** and the **Disabled Community** without any unsafe or hazardous conditions and it is all inclusive which is why the ADA was signed into Federal law in 1990.

In our conversation I also offered to speak to and/or meet on site with anyone who you feel would be involved in achieving compliance with the ADA on these items. At no cost to the County.

More good news, achieving compliance for a table and microphone as a podium for Disabled Wheelchair users maybe at easy and minimal cost to the County. Next to the existing podium and mic I noticed there are two tables with microphones on each side of the existing podium. Maybe one of those tables and mic could be designated for wheelchair users as a podium and for anyone else that can't stand to speak to the Dias as long as the clearances meet **ADAAG** (Americans with Disabilities Act Accessibility Guide).

The lack of designated wheelchair seating areas in the Chamber for Wheelchair users, Semi - Ambulatory users and Companion seating is also a low-cost item (mostly manpower). The Chamber doesn't have to be completely remodeled! A possible solution is, to remove a minimum 5% of the existing seats to provide room for Wheelchair seating area(s). The

10

number of wheelchair accessible seating is determined by the number of current seats in the Chamber.

Ms. Vargus [sic] you mentioned the building was very old (pre- 1990) and that there have been no structural changes in this building as well. "Therefore, the County is not required to remove any existing ADA barriers at this time". You might want to have that verified. And lastly, during our phone conversation you also said, "The County is considering a move to a new site"! When will that be?

Please write me back and/or have the person in charge of Disability Accessibility issues for the County write me back and let me know their thoughts on what action will be taken to achieve ADA Compliance on the items listed in this letter.

Respectfully,

Byron Chapman

52. For a time, Plaintiff did not hear back from Defendant. However, Defendant did write a response letter dated March 7, 2023. Plaintiff attended the LAFCO meeting on March 8, 2023, at The Domes. On March 9, 2023, Defendant sent the following response letter via certified mail:

March 7, 2023

Byron Chapman
[home address]
Re: ADA Barriers Exterior/Interior

Dear Mr. Chapman,

The County has received your letter dated February 14, 2023, Re: ADA Barriers Exterior/Interior. Thank you for your concerns regarding accessibility at the Facility located at 175 Fulweiler Avenue in Auburn, California. We are currently working on a project for ADA/accessibility at this location.

Sincerely,

Genevieve Vargas, AIA, LEED AP ID+C
Capital Improvements Manager

11

Complaint, Placer County

53. This was the sole correspondence on the issue. Plaintiff gave The Domes ample notice to correct the issues or provide information on their impending move. But the barriers remained and a subsequent investigation indicates they still remain today, in deliberate indifference to the obligations required and harms caused to Plaintiff.

54. Plaintiff is discouraged that despite his notifying The Domes of the noncompliance and having given ample time to correct, the County of Placer has failed to address the issues. However, Plaintiff is not deterred. Plaintiff will continue to attend these meetings. And therefore, due solely to the County of Placer's inaction and apathy, will continue to face discrimination in the form of barriers to access and to the exercise of his First Amendment rights as a result.

55. Plaintiff seeks removal of all barriers to access pertaining to his disability.

56. Plaintiff intends to return to The Domes and continue to exercise his First Amendment rights in the future. Plaintiff will do so despite the Defendant County of Placer's policy, borne of deliberate indifference, that constituted the "moving force" behind the violation of Plaintiff's rights. *Long v. County of Los Angeles*, 442 F. 3d 1178, 1194.

57. Plaintiff believes it is likely that other barriers to access exist given the obvious barriers he encountered. During litigation, Plaintiff will thoroughly investigate the property and amend the complaint to provide the full scope of remediation required. Plaintiff seeks to have all barriers related to his disability removed.

58. As the ADA has existed since 1990, Plaintiff alleges the above conditions were the result of either a policy failure or systematic negligence such that only policy modifications and regular future audits of the facility and policy modifications can ensure future compliance.

## I.     FIRST CAUSE OF ACTION:
## VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION
## 42 U.S.C. § 1983
## (On behalf of Plaintiff and against all Defendants)

59. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

Complaint, Placer County

60. The Right to Petition the Government for Redress of Grievances ("Right to Petition") is a right of co-equal importance with the other protections included in the First Amendment and the Right to Speech and Right to Petition are cognate rights that are co-dependent on each other. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). Any abridgment of those rights must be viewed with strict scrutiny.

61. The First Amendment to the United States Constitution is made applicable to the states via the Fourteenth Amendment. The First Amendment states, in relevant part, that the government may not infringe upon the people's right to "petition the Government for a redress of grievances."

62. Here, the County of Placer engaged in an ongoing policy of indifference with respect to the effect of its policies on the First Amendment Rights of Plaintiff and those similarly situated. Defendant had knowledge of the barriers at issue and the ability to objectively analyze their policies. However, Defendant allowed the barriers to remain and, in doing so, violated the Plaintiff's First Amendment rights.

63. These burdens are not narrowly tailored to a compelling government purpose, and to the extent the government has identified a compelling government purpose the restrictions levied are ineffective at serving those ends and fail to do so in the least restrictive manner to achieve those goals. It is axiomatic that the government cannot have a legitimate interest in restricting a constitutional right.

64. The actions taken by the County of Placer through its agents occurred under color of law.

65. As a result of the actions taken by the County of Placer, Plaintiff suffered deprivation of his constitutional rights.

Complaint, Placer County

**II.     SECOND CAUSE OF ACTION:**

**VIOLATION OF THE SUBSTANTIVE DUE PROCESS REQUIREMENT OF THE**

**FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

**42 U.S.C. § 1983**

**(On behalf of Plaintiff and against all Defendants)**

66. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

67. The Fourteenth Amendment states, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law…"

68. Here, the County of Placer engaged in an ongoing policy of indifference with respect to the effect of its policies on the First Amendment Rights of Plaintiff and those similarly situated. Defendant had knowledge of the barriers at issue and the ability to objectively analyze their policies. However, Defendant allowed the barriers to remain and, in doing so, violated the Plaintiff's First Amendment rights.

69. These burdens are not narrowly tailored to a compelling government purpose, and to the extent the government has identified a compelling government purpose the restrictions levied are ineffective at serving those ends and fail to do so in the least restrictive manner to achieve those goals. It is axiomatic that the government cannot have a legitimate interest in restricting a constitutional right.

Complaint, Placer County

### III.   THIRD CAUSE OF ACTION:

### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### 42 U.S.C. § 1983

### (On behalf of Plaintiff and against all Defendants)

70. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

71. The Fourteenth Amendment states, in relevant part, "nor shall any State… deny to any person within its jurisdiction the equal protection of the laws."

72. Here, the County of Placer engaged in an ongoing policy of indifference with respect to the effect of its policies on the First Amendment Rights of Plaintiff and those similarly situated. Defendant had knowledge of the barriers at issue and the ability to objectively analyze their policies. However, Defendant allowed the barriers to remain and, in doing so, violated the Plaintiff's First Amendment rights.

73. These burdens are not narrowly tailored to a compelling government purpose, and to the extent the government has identified a compelling government purpose the restrictions levied are ineffective at serving those ends and fail to do so in the least restrictive manner to achieve those goals. It is axiomatic that the government cannot have a legitimate interest in restricting a constitutional right.

### IV.   FOURTH CAUSE OF ACTION:

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

### Title 42 United State Code § 12131 *et seq.*

### (On behalf of Plaintiff and against all Defendants)

74. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

Complaint, Placer County

Seabock | Price

75. Title II of the Americans with Disabilities Act states, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the service, programs, or activities of a public entity, or be subjected to discrimination by such an entity. 42 § U.S.C. 12132.

76. The LAFCO meetings, and the operation and maintenance of The Domes are programs, services, or activities of the County of Placer.

77. The County of Placer is a political subdivision of the State of California.

78. Under Title II of the ADA Defendant was required to conduct a self-evaluation of its services, policies, and practices, and the effects thereof, by no later than January 26, 1993. 28 C.F.R. § 35.105(a). On information and belief, as of the date of the filing of this Complaint, Defendant has failed to conduct a self-evaluation of its services, policies, and facilities at The Domes.

79. Under Title II of the ADA, Defendant was required to develop a transition plan setting forth the steps necessary to complete the structural changes necessary to achieve program accessibility at The Domes within six months of January 26, 1992. 28 C.F.R. § 35.150(d)(1). On information and belief, as of the date of the filing of this Complaint, Defendant has failed to develop a transition plan setting forth the steps necessary to complete the structural changes necessary to achieve program accessibility at The Domes.

80. Under Title II of the ADA Defendant was required to remove physical barriers that limit or deny people with disabilities access to its programs, services, and activities by no later than January 26, 1995. 28 C.F.R. § 35.150(c). On information and belief, Defendant has failed, since the ADA was enacted and every year thereafter, to take appropriate measures to identify and remove barriers at The Domes.

81. Under Title II of the ADA, Defendant has an affirmative and ongoing obligation to operate The Domes' public facilities so that they are "readily accessible to and usable by individuals with disabilities" (28 C.F.R. § 35.150(a)). As fully set forth above, Defendant has failed and refused to fulfill this obligation. In writing, Defendant has affirmatively denied this obligation.

Complaint, Placer County

82. Under Title II of the ADA, Defendant has an affirmative obligation to design, construct, and/or alter the public facilities at The Domes such that they are readily accessible to and usable by individuals with disabilities, when the construction or alteration was commenced after January 26, 1992. 28 C.F.R. § 35.151. As fully set forth above, Defendant has failed and continues to fail to fulfill this obligation.

83. All Amenities provided must comply with applicable standards, typically the 2010 ADA Standards for Accessible Design ("ADASAD") or California Building Code. ("CBC").

84. Where seating is provided, accessible seating must also be provided. ADASAD Chapter 2 & 8; ADAAG Chapter 4.1.

85. Here, although Defendant provided seating in the Meeting Room, Defendant failed to provide accessible seating.

86. Where an element, feature, or fixture is provided, one must be provided within an accessible reach range. ADASAD Chapter 2 & 3; ADAAG Chapter 4.1, 4.2.

87. Here, although Defendant provided a microphone for use by citizen speakers, Defendant failed to provide an accessible microphone.

88. Where a work surface is provided, an accessible work surface must also be provided. ADASAD Chapter 2 & 9; ADAAG 4.1.

89. Here, although Defendant provided a table and podium for citizen speakers to use while making public comments, Defendant failed to provide an accessible table and/or podium.

90. When parking is provided, accessible parking must also be provided. ADASAD Chapter 2 & 5; 2004; 1991 ADAAG Chapter 4.6.

91. Here, despite offering parking, accessible parking has not been provided in conformance with the ADA Standards.

92. Where walkways, paths or other navigable elements are provided, accessible walkways, paths or other navigable elements must also be provided. ADASAD Chapter 2 & 4; 1991 ADAAG Chapter 4.3.

93. Here, despite offering walkways, paths or other navigable elements, accessible paths of travel have not been provided in conformance with the ADA Standards.

94. When restrooms are provided, accessible restrooms must also be provided. ADASAD Chapter 2, 3 & 6; 1991 ADAAG Chapter 4.16-4.17.

95. Here, though offering restrooms generally, accessible restrooms have not been provided in conformance with the ADA Standards.

96. Under Title II of the ADA, Defendant has an affirmative and ongoing obligation to maintain in operable working condition those features of The Domes that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 35.133(a). In acting as alleged, Defendant has failed to maintain the facilities at The Domes so that they are accessible to and usable by people with disabilities who use wheelchairs, including Plaintiff.

97. Although the City's maintenance obligations do not prohibit "isolated or temporary interruptions in service or access due to maintenance or repairs," 28 C.F.R. § 35.133(b), that is not applicable here. Plaintiff has demonstrated a pattern over many months, and despite notice, of consistent violations of the relevant Standards as set forth herein.

98. Under Title II of the ADA, Defendant is required to make reasonable modifications in policies, practices, or procedures where necessary to avoid discrimination against individuals on the basis of their disability. 28 C.F.R. § 35.130(b)(7). Defendant violated Plaintiff's right to reasonable modification when it failed and refused to act on Plaintiff's February 14, 2023, letter with recommendations for accessibility modifications. Defendant continued the failure and refusal to act with each Tort Claim denial.

99. Defendant's acts and omissions as herein alleged have excluded and/or denied Plaintiff the full benefit and use of the public facilities of The Domes, in violation of Title II and its implementing regulations and standards. In addition to the violations described above, Defendant's discriminatory conduct includes, *inter alia,*

    a. Denying Plaintiff the opportunity to participate in or benefit from the aids, benefits, or services offered at The Domes, on the basis of his disabilities (28 C.F.R. § 35.130(b)(1)(i));

Complaint, Placer County

b.  Otherwise limiting Plaintiff in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aids, benefits, or services offered at and by The Domes (28 C.F.R. § 35.130(b)(1)(vii));

c.  Otherwise limiting Plaintiff in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aids, benefits, or services offered at or by The Domes (28 C.F.R. § 35.130(b)(1)(vii));

d.  Utilizing methods of administration that have the effect of subjecting Plaintiff to discrimination on the basis of his disability (28 C.F.R. § 35.130(b)(3)(i)).

100.    Defendant's duties under Title II of the ADA pertaining to the accessibility at and of The Domes are affirmative, ongoing, mandatory, and long established. Defendant had knowledge of its duties at all times relevant herein and its failure to carry out said duties as alleged herein was a willful and knowing decision and choice, and/or the product of deliberate indifference.

101.    Defendant was provided actual notice of the barriers at The Domes both by letter and Tort Claim. Defendant was also provided notice of the impact those barriers had and continue to have on Plaintiff and of its duty to remove such barriers under Title II of the ADA. Despite this knowledge, Defendant failed and overtly refused to take any steps to remove the barriers or otherwise address Plaintiff's concerns and reasonable modification request. Defendant's failures in this regard constitute deliberate indifference.

102.    The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit also do not comply with the 1991 Standards. 28 CFR § 35.151(b)(4)(ii)(C).

103.    Here, the failure to ensure that accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

Complaint, Placer County

Seabock | Price

### V. FIFTH CAUSE OF ACTION:

### VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT

### California Civil Code § 54.1

### (On behalf of Plaintiff and against all Defendants)

104.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

105.     The California Disabled Persons Act ("CDPA") guarantees, among other things, that persons with disabilities are entitled to full and equal access to places of public accommodation and all "places to which the general public is invited" within the jurisdiction of the State of California. Cal. Civ. Code § 54.1(a)(1).

106.     The CDPA provides that any violation of the ADA is a violation of the CDPA. Cal. Civ. Code § 54.1(d).

107.     Defendants' acts and omissions, as herein alleged, have violated the CDPA by, among other things, denying Plaintiff full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

108.     Because the violation of the ADA interfered with the rights of an individual with a disability under §§ 54, 54.1 or 54.2, Defendants are also each responsible for statutory damages, i.e., a civil penalty. Cal. Civ. Code § 54.3.

109.     Defendant was provided actual notice of the barriers at The Domes and of its discriminatory policies, the impact those barriers and discriminatory policies had and continue to have on Plaintiff, and its duty to remove and modify such barriers and policies under the Unruh Act and related federal and state laws. Despite this knowledge, Defendant has failed and refused to take any steps to remove the barriers, modify their policies or otherwise address Plaintiff's concerns or reasonable modification requests. Defendant's failures in this regard constitute deliberate indifference.

Complaint, Placer County

## **PRAYER**

In light of the above, Plaintiff prays that this Court award damages and provide relief as follows:

110.     A determination that Defendants are liable for violations of the First Amended to the United States Constitution, Fourteenth Amendment to the United States Constitution, Americans with Disabilities Act, and Disabled Persons Act.

111.     For preliminary injunctive relief, compelling Defendants to ensure the maximum level of accessibility during and prior to any period of construction to remove more complicated barriers:

    a.  Installation of accessible seating in the Meeting Room.

    b.  Installation or provision of an accessible speakers area/podium and microphone.

    c.  Installation of features, fixtures, and elements in the restroom withing allowable reach ranges.

112.     For permanent injunctive relief, compelling Defendants to remove all presently existing architectural barriers as required by the Americans with Disabilities Act within 90 days of judgment, or another date certain determined to be just by the Court. This shall include, but not be limited to the following barriers encountered by the plaintiff:

    a.  Installation of accessible seating in the Meeting Room.

    b.  Installation or provision of an accessible speakers area/podium and microphone.

    c.  Installation of a compliant accessible parking spaces on a route that is convenient to access The Domes without passing behind or in front of other vehicles.

    d.  Installation of all necessary signage that will enable enforcement of applicable laws against individuals improperly parking in the designated parking space or access aisle.

    e.  Installation of an accessible ramp, with all fixtures thereof compliant.

Complaint, Placer County

f. Installation of a fully compliant restroom facility that allows use by persons using a wheelchair. To the extent full compliance is not readily achievable, the most readily achievable alternative shall be offered.

113. For injunctive relief requiring that Defendants obtain biennial Certified Access Specialist ("CASp") architectural inspections of the subject facility to verify ongoing ADA compliance and to follow those inspections' recommendations of all readily achievable barrier removal. The first inspection shall occur within 90 days of judgment, or another date certain determined to be just by the Court.

114. For injunctive relief requiring the implementation and adoption of a Transition Plan to bring the Domes into compliance with the ADA.

115. For injunctive relief requiring implementation of accessibility policies and requiring annual employee training on providing full and equal access to citizens with disabilities. This shall be implemented within 90 days of judgment, or another date certain determined to be just by the Court.

116. For actual damages subject to proof under the 28 C.F.R. § 1983 and California Disabled Persons Act.

117. For treble actual damages, or in no case an amount less than the statutory minimum damages prescribed by statute for each occasion Plaintiff was denied full and equal access.

118. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205 and Cal. Civ. Code § 54.3(a); 42 U.S.C. § 1988.

Date: November 9, 2023

SEABOCK PRICE APC

_____

Amanda Seabock
Attorney for Plaintiff